# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

TERRY PHILLIPS,

    Plaintiff,

v.                                                            Case No. 2:21-cv-02049-MSN-cgc

MID-SOUTH TRANSPORTATION
MANAGEMENT, INC. and AMALGAMATED
TRANSIT UNION LOCAL 713,

    Defendants.

## ORDER GRANTING DEFENDANT MID-SOUTH TRANSPORTATION MANAGEMENT'S MOTION TO DISMISS

Before the Court is Defendant Mid-South Transportation Management's ("MTM") Motion to Dismiss. (ECF Nos. 15, 15-1) ("Motion"). Plaintiff responded seventeen (17) days after the deadline to respond. (ECF Nos. 18, 18-1.) Defendant filed its reply in support. (ECF No. 19.) For the reasons below, Defendant's Motion is **GRANTED**.

### BACKGROUND

The Court must decide whether Plaintiff's re-employment agreement, executed between a once terminated then rehired employee and his employer, imparts on the employer a duty to restore the employee's seniority status absent a corresponding provision in the operative Collective Bargaining Agreement ("CBA").[1]  It does not.

---

[1] MTM and Amalgamated Transit Union Local 713 ("ATU") ratified the CBA. (ECF No. 1 at PageID 3.) It provides that ATU would be the "sole bargaining agent for all its employees who are covered by this Agreement for the purpose of collective bargaining with respect to wages, hours, and working conditions." (ECF No. 12-2 at PageID 49.)

MTM initially hired Plaintiff on March 26, 2018 as a bus operator. (ECF No. 1 at PageID 2.) He remained employed by MTM until some unspecified date thereafter. (*Id*. at PageID 3.) While no longer an active MTM employee, Plaintiff signed a separate "Re-Employment Agreement" ("REA") with MTM on January 23, 2020. (*Id*. at PageID 10.) The REA—signed by Plaintiff and Beth Elder, MTM's Senior Human Resources Manager— provided that MTM would rehire Plaintiff effective February 3, 2020, and, after a ninety (90) day probationary period, Plaintiff's original March 26, 2018 seniority date would be restored. (*Id*. at PageID 9.) ATU did not have any involvement with the REA. (*Id*.)

Plaintiff completed his 90-day probationary period on or about May 3, 2020, but MTM did not restore his seniority based on his original hire date. (*Id.* at PageID 3.) MTM also did not pay Plaintiff in accordance with his seniority and prevented him from selecting bus runs according to the same, which would have yielded him additional earnings. (*Id.*) Consequently, Plaintiff requested that ATU file a grievance on his behalf to restore his original seniority and seek back pay from May 3, 2020. (*Id.*) ATU refused to file any such grievance and one of its representatives contacted Plaintiff via text message to explain, "there is nothing that [the] Union can do about the letter because that was an agreement between you and the Company. And from my understanding you weren't employed with the company when you signed the letter." (*Id*.)

On January 22, 2021, Plaintiff filed his Complaint, bringing claims against MTM and ATU. (*Id*. at PageID 1.) Count I alleges that MTM breached its CBA in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (ECF No. 18 at PageID 177; ECF No. 1 at PageID 4.) Count II alleges ATU breached its duty of fair representation in violation of Section 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159 (ECF No. 1. at PageID 5) and Section 301 of the LMRA, 29 U.S.C § 185. (ECF No. 14 at PageID 95.) Plaintiff

also alleges that ATU acted in a discriminatory, dishonest, arbitrary, or perfunctory fashion, breaching its duty of fair representation.[2] (ECF No. 1 at PageID 6 ¶ 24.) Plaintiff alleges in Count III that MTM committed breach of contract under Tennessee Law when it refused to restore his seniority under the subsequently ratified REA. (ECF No. 1 at PageID 6–7.) MTM filed the instant Motion under Federal Rule of Civil Procedure 12(b)(6) as to Counts I and III of the Complaint on April 28, 2021. (ECF Nos. 15, 15-1.)

## **LEGAL STANDARD**

Deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)). The Court adopts this framework to determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will be found plausible on its face only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While a complaint need not include detailed factual allegations, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Stated differently, "[t]he factual allegations need not be overly detailed, but nor can they merely recite the elements of a cause of action and make a 'the-defendant-did-it' allegation." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 759 (6th Cir. 2020); *see*

---

[2] Plaintiff's claims against ATU and ATU's Motion to Dismiss, (ECF Nos. 12, 12-1), will be addressed by the Court in a separate Order.

3

*also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) ("Factual allegations must be enough to raise a right to relief above [a] speculative level.") If a court, relying on its judicial experience and common sense, determines that the claim is not plausible, the case may be dismissed at the pleading stage. *Iqbal*, 556 U.S. at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## DISCUSSION

The Court will address three considerations: an administrative matter and the two arguments raised in Defendant's Motion. These considerations include: (1) Plaintiff's untimely response to Defendant's Motion; (2) whether the REA trumps the CBA regarding an employee's seniority; and (3) whether Plaintiff's breach of contract claim under Tennessee Law is preempted.

A. <u>Plaintiff's Local Rule 12.1(b) noncompliance warrants exclusion of his response.</u>

Noncompliance with the Local Rules must not be lightly taken because they "promote the efficient operation of the district courts . . . ." *Sinito v. United States*, 750 F.2d 512, 515 (6th Cir. 1984). The principle that "[d]istrict courts have broad discretion in interpreting, applying, and determining the requirements of their own local rules and general orders" is well settled in this Circuit. *Pearce v. Chrysler Grp., LLC Pension Plan*, 615 F. App'x 342, 349 (6th Cir. 2015); *see S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008). "A court acts within its discretion when it strikes a filing for . . . untimeliness or a failure to comply with the local rules." *Johnson v. Baptist Mem'l Health Care Corp.*, No. 2:18-cv-02509, 2019 WL 5847850, at *2 (W.D. Tenn. 2019); *see, e.g.*, *Ordos City Hawtai Autobody Co. v. Dimond Rigging Co.*, 695 F. App'x 864, 870–72 (6th Cir. 2017) (affirming the district court's decision to strike a response brief due to noncompliance with local rules); *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Grp., a Div. of Reed Elsevier Grp., PLC*,

463 F.3d 478, 488–89 (6th Cir. 2006) (affirming the district court's decision to strike a reply brief for noncompliance with local rules); *Jones v. Northcoast Behavioral Healthcare Sys.*, 84 F. App'x 597, 598–99 (6th Cir. 2003) (affirming the district court's strike of untimely memorandum of law).

Local Rule 12.1(b) provides in relevant part that, "[a] party opposing a motion to dismiss must file a response within 28 days after the motion is served." Here, Defendant filed its Motion on April 28, 2021, making Plaintiff's Response deadline twenty-eight (28) days thereafter: May 26, 2021. However, notwithstanding ample opportunity to request an extension of time, Plaintiff filed his Response on June 12, 2021, a full *seventeen* (17) days *after* his deadline lapsed. (*See* ECF No. 18.) Plaintiff has not pled any grounds for why he filed a late response, let alone why he filed it seventeen days late.[3] Therefore, the Court declines to consider any arguments in the Response because Plaintiff failed to timely file it in compliance with Local Rule 12.1(b).

B. The CBA supersedes the REA.

Given Plaintiff's noncompliance with Local Rule 12.1(b), the Court only considers those allegations included on the face of the Complaint and the arguments in Defendant's Motion. (ECF Nos. 1, 15-1.) Count I in the Complaint alleges that the CBA adopted by MTM and ATU, to which Plaintiff was a third-party beneficiary, provided that (1) Plaintiff would be paid in accordance with his original seniority and (2) the REA signed by Plaintiff and MTM also authorized the reinstitution of his seniority status at MTM. (*Id*. at PageID 4.) Defendant's Motion argues that Plaintiff has (1) failed to identify a CBA provision that has been breached and (2) the REA did not legally modify the CBA.

---

[3] Had Plaintiff raised good grounds—or *any* grounds—for why his Response could not be timely filed, the Court would have considered them. Absent any such showing, the Court sees no reason to excuse Plaintiff's error.

At issue is what courts in this circuit call a "hybrid claim" under 29 U.S.C. § 185—commonly cited as "Section 301" ("§ 301"), where it appears in the Labor Management Relations Act ("LMRA")—because Plaintiff "must prove *both* (1) that the employer breached the collective bargaining agreement *and* (2) that the union breached its duty of fair representation." *Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019) (emphasis added); *Pratt v. UAW, Local 1435*, 939 F.2d 385, 388 (6th Cir. 1991) (citing *Bagsby v. Lewis Bros. Inc of Tenn.,* 820 F.2d 799, 801 (6th Cir. 1987)) (To prevail in a § 301 action, "the plaintiff must show that the employer breached the collective bargaining agreement *and* that the union breached its duty of fair representation.") The action comprises two separate suits, each of which is "inextricably interdependent" upon the other. *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 164 (1983). "An employee's hybrid claim must fail if the employee 'cannot satisfy both prongs of that test[.]'" *Jones v. Interlake S.S. Co.*, No. 20-2210, 2021 WL 3719355, at *8–9 (6th Cir. 2021) (quoting *Swanigan*, 938 F.3d at 784) (emphasis in original); *see Pratt*, 939 F.2d at 388 ("Unless [the plaintiff] demonstrates *both* violations, he cannot succeed against either party.").

Appellate courts have made it unfailingly clear that plain terms in operative CBAs control § 301 disputes and plaintiffs must identify a *specific* CBA provision that has been breached to prevail. *See Swanigan*, 938 F.3d at 786 ("For without a plausible allegation that [the employer] violated a specific provision of the collective-bargaining agreement, plaintiffs' § 301 claim fails as a matter of law."); *Jones v. Interlake S.S. Co.*, Case No. 20-2210, 2021 WL 3719355, *12 (6th Cir. 2021); *see also Boldt v. Northern States Power Co.*, 904 F.3d 586, 590 (8th Cir. 2018) ("A substantially dependent claim under the LMRA is one that 'require[s] the interpretation of some specific provision of' a collective-bargaining agreement . . . .") (quoting *Meyer v. Schnucks Mkts., Inc.*, 163 F.3d 1048, 1051 (8th Cir. 1998)). Other courts agree: "mere reference to a CBA does

not automatically cast the claim as one requiring the interpretation of a CBA." *Meza v. Pac. Bell. Tel. Co.*, No. 17-cv-00665, 2017 WL 3503408, at *17–18 (E.D. Cal. 2017).

Here, Plaintiff has not identified any provision in his CBA that MTM violated. His assertion that the CBA continued his seniority status—despite Plaintiff being terminated and rehired—lacks any apparent foundation in the text of that document as described in the Complaint. Put differently, the Court cannot interpret a challenged CBA provision when Plaintiff has not identified which provision he challenges. Moreover, the Sixth Circuit has made clear that § 301 "preempts state law claims that are 'substantially dependent on analysis of a collective-bargaining agreement.'" *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799 (6th Cir. 1990) (quoting *IBEW v. Hechler*, 481 U.S. 851, 859 n.3 (1987)).[4] Therefore, because Plaintiff has failed to render "a plausible allegation that [MTM] violated a specific provision of the collective bargaining agreement" that controls this dispute, his Count I claim "must fail as a matter of law." *Swanigan*, 938 F.3d at 786; *see Garrish v. Int'l Union*, 417 F.3d 590, 598 (6th Cir. 2005) (no breach of CBA because plaintiffs could not identify a provision thereof that had been breached).

    C. <u>Plaintiff's state law breach of contract claim fails because it has been preempted.</u>

Plaintiff has brought a breach of contract claim against MTM under Tennessee Law in Count III of his Complaint. The Complaint does not mention the specific provision of state law under which Plaintiff brings his claim and cites supplemental jurisdiction under 28 U.S. Code § 1367 as the basis for addressing it in federal court. (ECF No. 1 at PageID 6.) Plaintiff argues that MTM's decision not to award him seniority after his 90-day probationary period expired deviated from the terms of the REA and constitutes breach of contract. (*Id*. at 6–7.) MTM argues in its Motion that § 301 preempts Plaintiff's state law claim because Plaintiff again became subject to

---

[4] This preemption deserves even greater weight in this matter because MTM and Plaintiff executed the REA *without* any input from ATU, whereas here the CBA involved all three parties.

the CBA when MTM rehired him and thus his individual claims fall within the CBA. (ECF No. 15-1 at PageID 116–17.) *See Smith v. Evening News Ass'n*, 371 U.S. 195, 200–01 (1962).

The U.S. Supreme Court's rationale for why § 301 preempts state law claims of the variety herein alleged has been well-settled law for nearly half a century.[5] In short, the U.S. Supreme Court expressed concerns that "[t]he possibility. . . individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962). Sixth Circuit precedent closely tracks this reasoning, holding "that it is beyond question that [Plaintiff] must look to federal labor law for any relief and that his sole remedy, if any, lies not in state law but in the terms of the collective bargaining agreement." *Maushund v. Earl C. Smith, Inc.*, 795 F.2d 589, 590 (6th Cir. 1986); *see Newspaper Drivers & Handlers' Local Union No. 372 v. Detroit Newspaper Agency*, No. 95-2025, 1996 U.S. App. LEXIS 30400 at *15 (6th Cir. 1996) ("Individual agreements should only be allowed when they are consistent with the collective bargaining agreement.") Therefore, where individual employment agreements conflict with operative CBAs the latter controls and state law offers no remedy. *See Jones v. General Motors Corp.*, 939 F.3d 380, 383 (6th Cir. 1991) (holding § 301 preempts state law remedies when a CBA is implicated).

---

[5] The U.S. Supreme Court sketched an important policy rationale for why CBAs govern employment disputes about pay and employment conditions. Specifically, the Court has noted, "[t]he rights of individual employees concerning rates of pay and conditions of employment are a major focus of the negotiation and administration of collective bargaining contracts. Individual claims lie at the heart of the grievance and arbitration machinery, are to a large degree inevitably intertwined with union interests and many times precipitate grave questions concerning the interpretation and enforceability of the collective bargaining contract on which they are based. To exclude these claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law." *Smith*, 371 U.S. at 200.

Here, the Court finds Plaintiff's Count III breach of contract claim has been preempted for two reasons.  <u>First</u>, Plaintiff has failed to identify any operative CBA provision that suggests the CBA and REA are compatible.  *See Detroit Newspaper Agency*, 1996 U.S. App. LEXIS 30400.  <u>Second</u>, Plaintiff has failed to identify a provision within the operative CBA—his "sole remedy"—that would merit good cause for relief.  *See Maushund*, 795 F.2d at 590.  Therefore, Plaintiff has failed to state a claim upon which relief may be granted and his Complaint cannot survive Defendant's Motion.[6]  The Complaint as to Defendant MTM is **DISMISSED**.

## CONCLUSION

For the reasons articulated above, the Court **GRANTS** Defendant MTM's Motion to Dismiss.  (ECF No. 15.)  The Court hereby **DISMISSES WITH PREJUDICE** Counts I and III of the Complaint.  (ECF No. 1.)

**IT IS SO ORDERED**, this 28th day of March 2022.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

---

[6] As to Plaintiff's "Prayer for Relief", (ECF No. 1 at PageID 7), the Court notes that Plaintiff requests "punitive damages for Defendants' malicious and recklessly indifferent conduct" absent a factual basis for these claims.  Plaintiff has also not described any facts to support an award of "compensatory damages for the humiliation, emotional distress, pain and suffering" also requested.  Factual allegations that do not rise beyond a speculative level cannot constitute good grounds for relief and will not survive a Motion to Dismiss.  *See Twombly*, 550 U.S. at 555.