IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

TERRY PHILLIPS,

    Plaintiff,

v.                                           Case No. 2:21-cv-02049-MSN-cgc

MID-SOUTH TRANSPORTATION
MANAGEMENT, INC. and AMALGAMATED
TRANSIT UNION LOCAL 713,

    Defendants.

**ORDER GRANTING DEFENDANT AMALGAMATED TRANSIT UNION LOCAL 713'S MOTION TO DISMISS**

Before the Court is Defendant Amalgamated Transit Union Local 713's ("ATU", "Union") Motion to Dismiss, filed April 15, 2021. (ECF Nos. 12, 12-1) ("Motion"). Plaintiff responded on April 27, 2021. (ECF No. 14.) Defendant ATU filed a reply in support on May 5, 2021. (ECF No. 17.) For the reasons below, Defendant's Motion is **GRANTED**.

### BACKGROUND

The Court must decide whether ATU breached its duty of fair representation when it declined to submit a grievance following MTM's failure to restore Plaintiff's seniority in accordance with a subsequent employment agreement executed by Plaintiff and MTM.[1] It did not.

---

[1] Plaintiff and MTM ratified a "reemployment agreement" that provided for restoration of Plaintiff's seniority upon rehire. (ECF No. 1 at PageID 10.) MTM and ATU also have a Collective Bargaining Agreement ("CBA"). (*Id*. at PageID 3.) The CBA provides that ATU would be the "sole bargaining agent for all its employees who are covered by this Agreement for the purpose of collective bargaining with respect to wages, hours, and working conditions." (ECF No. 12-2 at PageID 49.)

1

MTM initially hired Plaintiff on March 26, 2018 as a bus operator. (ECF No. 1 at PageID 2.) Plaintiff remained employed by MTM until some unspecified date thereafter. (*Id*. at PageID 3.) While no longer an active MTM employee, Plaintiff signed a separate "Re-Employment Agreement" ("REA") with MTM on January 23, 2020. (*Id*. at PageID 10.) The REA—signed by Plaintiff and Beth Elder, MTM's Senior Human Resources Manager—provided that MTM would rehire Plaintiff effective February 3, 2020, and, after a ninety (90) day probationary period, Plaintiff's original March 26, 2018 seniority date would be restored. (*Id*. at PageID 9.) ATU did not have any involvement with the REA. (*Id*.)

Plaintiff completed his 90-day probationary period on or about May 3, 2020, but MTM did not restore his seniority based on his original date of hire. (*Id.* at PageID 3.) MTM also did not pay Plaintiff in accordance with his seniority and prevented him from selecting bus runs according to his seniority, which would have yielded him additional earnings. (*Id.*) Consequently, Plaintiff requested that ATU file a grievance on his behalf to restore his original seniority and seek back pay from May 3, 2020. (*Id.*) ATU refused to file any such grievance and one of its representatives contacted Plaintiff via text message to explain, "there is nothing that [the] Union can do about the letter because that was an agreement between you and the Company. And from my understanding you weren't employed with the company when you signed the letter." (*Id.*)

On January 22, 2021, Plaintiff filed his Complaint, bringing claims against MTM and ATU. (*Id*. at PageID 1.) Count I alleges that MTM breached its CBA in violation of Section 301 ("§ 301") of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (ECF No. 18 at PageID 177; ECF No. 1 at PageID 4.) Count II alleges ATU breached its duty of fair representation in violation of Section 9(a) ("§ 9(a)") of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159 (ECF No. 1. at PageID 5) and § 301 of the LMRA, 29 U.S.C § 185. (ECF No. 14 at PageID

95.) Plaintiff also alleges in Count II that ATU acted in a discriminatory, dishonest, arbitrary, or perfunctory fashion when it breached its duty of fair representation.[2] (ECF No. 1 at PageID 6 ¶ 24.) ATU filed the instant Motion under Federal Rule of Civil Procedure 12(b)(6) on April 28, 2021. (ECF Nos. 12, 12-1.) In Count III, Plaintiff alleges that MTM committed breach of contract under Tennessee Law when it refused to restore his seniority under the subsequent REA. (ECF No. 1 at PageID 6–7.)

## LEGAL STANDARD

Deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)). The Court adopts this framework to determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint will be found plausible on its face only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While a complaint need not include detailed factual allegations, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Stated differently, "[t]he factual allegations need not be overly detailed, but nor can they merely recite the elements of a cause of action and make a 'the-defendant-did-it' allegation." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 759 (6th Cir. 2020); *see*

---

[2] Plaintiff's claims against MTM and MTM's Motion to Dismiss, (ECF Nos. 15, 15-1), will be addressed by the Court in a separate Order.

3

*also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) ("Factual allegations must be enough to raise a right to relief above [a] speculative level.") If a court, relying on its judicial experience and common sense, determines that the claim is not plausible, the case may be dismissed at the pleading stage. *Iqbal*, 556 U.S. at 679. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## DISCUSSION

The Court will address (1) whether Plaintiff has brought a legally cognizable claim under NLRA § 9(a) and (2) whether Plaintiff has brought a legally cognizable claim under LMRA § 301. Unlike § 301, § 9(a) "creates a duty of fair representation on the representative union . . . [that] does not depend on the existence of a collective bargaining agreement," *Id.*, but instead "flows from the union's statutory position as exclusive representative and exists both before and after the execution of an agreement." *Storey v. Local 327*, 759 F.2d 517, 523 (6th Cir. 1985); *Hank v. Great Lakes Constr. Co.*, 790 F. App'x 690, 701 (6th Cir. 2019) ("Courts have interpreted Section 9(a) to impose on unions a *freestanding duty* of fair representation, not connected to any collective bargaining agreement.") (emphasis added).

While a § 9(a) claim "in conjunction with 28 U.S.C. § 1337 creates a jurisdictional basis for actions for breach of duty of fair representation independent of Section 301," a § 301 hybrid claim requires Plaintiff to show *both* the employer breached the CBA *and* the union breached its duty of fair representation.[3] *Pratt v. UAW, Local 1435*, 939 F.2d 389, 388 (6th Cir. 1991). "The

---

[3] Under § 301, "[i]f the union member fails to prove that the union breached its duty, he will, obviously, recover nothing from the union. If the union member fails to prove that the employer breached the collective bargaining agreement, he also will recover nothing because the union member's grievance would have failed regardless of the union's representation." *Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 424 (6th Cir. 1998).

4

courts have long held that a plaintiff cannot circumvent the dual § 301 requirements by 'artfully pleading 28 U.S.C. § 1337 as a jurisdictional basis and casting their duty of fair representation claims as independent causes of action in what are, in substance, hybrid 301 claims.'" *Summers v. Keebler Co.*, 133 F. App'x 249, 252 (6th Cir. 2005) (quoting *Pratt*, 939 F.2d at 389).

A. <u>Plaintiff has not brought a proper claim under NLRA § 9(a).</u>

A valid § 9(a) claim requires that "the complaint allege[] breaches of duty on the part of the union *independent* of the collective bargaining agreement." *Pratt*, 939 F.2d at 389 (emphasis in original); *see White v. Anchor Motor Freight, Inc.* 899 F.2d 555, 558 (6th Cir. 1990). Critically, "where a plaintiff's complaint states a 'colorable claim' under the collective bargaining agreement, it *must* be construed as a § 301 claim rather than a § 9(a) claim." *Summers*, 133 F. App'x at 252 (emphasis added).

In *White*, the plaintiff brought § 301 claims against his employer and union, *alleging a breach of his CBA*, and an independent § 9(a) claim against his union only. 899 F.2d at 558. The Sixth Circuit reasoned that "if the first claim anchored in the employer's alleged breach of the collective bargaining agreement fails, then the breach of duty of fair representation claims against the union must necessarily fail with it." *Id.* at 559. The Court held that the plaintiff's claim against his union must be construed as under § 301 and not § 9(a) because a "colorable allegation" existed under the terms of the CBA and therefore treatment under § 9(a) would be unprecedented.[4]

---

[4] "In none of the cases in which this and other courts have asserted jurisdiction under 28 U.S.C. § 1337 over separate causes of action alleging breach of a union's duty of fair representation, however, has there been a colorable allegation that a collective bargaining agreement had been breached. Rather, in all of those cases, the principal issue joined by the controversy arose from circumstances rooted in the relationship existing between a union member and his union, rather than in the relationship existing between a union member, his union, and his employer as forged through a collective bargaining agreement." *White*, 899 F.2d at 560–61.

Conversely, in *Pratt*, the plaintiff alleged that his union breached its duty of fair representation by failing to help him resolve his challenges at work, inducing him to quit, and ultimately neglecting to help him reacquire his job. 939 F.2d at 389. The plaintiff did not list his employer as a defendant and *did not file a grievance under the CBA. Id.* There, the Sixth Circuit held that the plaintiff *did* properly bring a § 9(a) claim because his claim arose independent from the CBA. *Id.; see also Cavanaugh v. UAW Int'l Union*, No. 15-13223, 2017 WL 445599, at *17 (holding that the plaintiff's claim against the union should be construed as a § 9(a) claim because he had no colorable claim against his employer under the CBA).

Here, Count II in Plaintiff's Complaint alleges that ATU violated § 9(a) of the NLRA but does not invoke § 301. (ECF No. 1 at PageID 5.) However, Count I of the Complaint explicitly alleges a breach of the CBA, unlike the plaintiffs in *Pratt* and *Cavanaugh*, (ECF No. 1 at PageID 4.), and Count II asserts that ATU "refused to enforce the . . . [REA] pursuant to the terms of the collective bargaining agreement." (*Id.* at PageID 5; ECF No. 14-1 at PageID 101.) Though Plaintiff acknowledges § 301 in his Responses to both Defendants' Motions to Dismiss, his claim depends—by his own admission—on the alleged breach of the CBA's terms.[5] Therefore, § 9(a) does not apply and his claim "must be construed" as a classic § 301 hybrid claim. *Summers*, 133 F. App'x at 252; *see Hank*, 790 F. App'x at 701.

B. <u>Plaintiff has not identified a CBA provision that affords him grounds for relief.</u>

To prevail against a union on the basis that it breached its duty of fair representation under § 301, a plaintiff must establish (a) that the union failed to represent him on matters *within* the CBA's terms and (b) that his employer breached the CBA. *Hank*, 790 F. App'x at 701 (quoting

---

[5] Plaintiff stated in his Response that, "[a]n analysis of whether defendant, Amalgamated Transit Union Local 713, breached its duty of fair representation, is *dependent on the terms* of the [collective bargaining agreement]." (ECF No. 14-1 at PageID 107) (emphasis added).

29 U.S.C. § 185(a)) ("Under Section 301 of the LMRA, plaintiffs can sue for 'violation of contracts between an employer and a labor organization,' more often called collective bargaining agreements."); *see Bagsby v. Lewis Bros. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987) (unless plaintiff "demonstrates both violations, he cannot succeed against either party"). Similarly, to show that a union has an elevated duty of fair representation, the plaintiff must identify specific language in the CBA that explicates that heightened duty. *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 374 (1990) (union not bound to a heightened duty of fair representation because CBA did not specify one).

Here, Plaintiff first argues that ATU did in fact breach a provision of the CBA, specifically Section 20 that outlines the Wage Scale for First Tier Operators, (ECF No. 12-2 at PageID 62-63), and Section 25, which details the protocol for an operator's seniority. (*Id*. at PageID 65-66.) Though certainly colorable allegations, Plaintiff's argument fails because neither challenged provision addresses *re-hired* employees in Plaintiff's situation and operative caselaw instructs that the CBA's actual terms govern a union's duties thereunder.[6] *DeShetler v. FCA US, LLC*, 790 F. App'x 664, 669 (6th Cir. 2019) ("With regard to a breach of a collective bargaining agreement by the employer, plaintiffs must sufficiently plead a breach of an actual provision of a collective bargaining agreement . . . ."); *see Harris v. American Postal Workers Union*, No. 98-1734, 1999 WL 993882, *4–5 (6th Cir. 1999) ("It is a basic tenet of contract law that a party can only advance

---

[6] The Court notes that CBA Section 25 does address "recalled" employees, or those terminated "[w]hen in the conduct of the Company's business it becomes necessary to reduce the force." (ECF No. 12-2 at PageID 65.) Plaintiff has not provided a reason for his termination in his Complaint or Response to Defendant's Motion; the Court will not speculate as to why MTM terminated him. Moreover, the CBA does not mention any 90-day probationary period for recalled employees like the one with which Plaintiff complied, but it does mention such a period for *new* employees in Section 4—clear indicia Plaintiff was not *recalled*, but *rehired*. (*Id*. at PageID 49.) Therefore, without more, the Court concludes Section 25 does not offer Plaintiff relief under the CBA's "actual terms". *DeShetler*, 790 F. App'x at 669.

a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached.") Therefore, ATU did not breach its duty of fair representation because the CBA's actual terms do not address re-hired employees.

Second, Plaintiff argues that while ATU need not act on a grievance that it deems meritless, his grievance has merit because MTM gave Plaintiff a benefit to which the CBA entitled him under "the terms of the re-employment agreement." (ECF No. 1 at PageID 5.) Yet, the terms of the REA plainly exceed the scope of the CBA because the CBA provisions identified by Plaintiff do not address rehired employees whereas the REA does address rehired employees.[7] Therefore, ATU owes no legal or contractual duty to pursue a grievance on Plaintiff's behalf under a provision of the REA that lacks a corresponding provision in the CBA.[8] *Rawson*, 495 U.S. at 374 (a plaintiff "must be able to point to language in the collective-bargaining agreement *specifically indicating an intent to create obligations* enforceable against the union . . . .") (emphasis added).

    C. <u>Plaintiff has not plead sufficient facts to show that ATU acted in a manner that was arbitrary, discriminatory, or in bad faith, and has not shown that ATU breached its duty of fair representation.</u>

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *see also Palnau v. Detroit Edison Co.,* 301 F.2d 702, 705 (6th Cir. 1962) (holding that the plaintiff must plead at least some facts to support the legal

---

[7] The Court notes that ATU did not have any involvement with the ratification of the REA, (ECF No. 1 at PageID 9), and that § 301 preempts secondary contracts that conflict with terms of an operative CBA. *See Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 799 (6th Cir. 1990) (quoting *IBEW v. Hechler*, 481 U.S. 851, 859 n.3 (1987)) (holding § 301 "preempts state law claims that are 'substantially dependent on analysis of a collective-bargaining agreement.'")

[8] The Court notes that Section 6 of the CBA establishes a grievance procedure only for disputes "within the scope of this [CBA]." (ECF No. 12-2 at PageID 49-51.) *See Dragovic v. Enprotech Steel Servs.*, No. 1:10-cv-01250, 2011 WL 723057, at *17-18 (N.D. Ohio 2011) (when CBA creates a grievance procedure only for disputes "concerning the application or interpretation" of the CBA itself, plaintiff must identify a specific CBA provision to prevail).

conclusion that the union acted arbitrarily or in bad faith). "Plaintiffs do not need to show all three; rather, plaintiffs have three separate and distinct routes to prove that a union violated its duty of fair representation." *DeShetler*, 790 F. App'x 664 at 669. A union acts arbitrarily when, in light of the "factual and legal landscape" of the union's actions, "the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 67, 68, 79 (1991); *Walk v. P.I.E. Nationwide,* 958 F.2d 1323, 1326 (6th Cir. 1992) (holding that "an unwise or even an unconsidered decision by the union is not necessarily an irrational decision.") "A union acts arbitrarily by failing to take a basic and required step." *Vencl*, 137 F.3d at 426. An employee does not have an "absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." *Vaca*, 386 U.S. at 191. Discriminatory actions by a union must be "intentional, severe, and unrelated to legitimate union objectives." *Amalgamted Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971). "To demonstrate bad faith, a plaintiff must show that the union acted with an improper intent, purpose, or motive encompassing fraud, dishonesty, and other intentionally misleading conduct." *Ohlendorf v. United Food & Commercial Workers Int'l Union, Local 876*, 883 F.3d 636, 644 (6th Cir. 2018). Yet, a union's grievance process need not be "error-free." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571 (1976).

Plaintiff argues that "[t]here are facts from which a jury could conclude that the Union's representation was arbitrary, irrational, and perfunctory." (ECF No. 14-1 at PageID 106.) Specifically, Plaintiff cites the previously mentioned wage scale and seniority protocol provisions in the CBA (Sections 20, 25); he argues that his claim had merit under these provisions, (*Id*. at PageID 105–06), and therefore ATU acted arbitrarily when it declined to pursue a grievance on

9

his behalf. (*Id.*) He does not cite any facts to show ATU acted in bad faith. Defendant ATU argues that its actions complied with the CBA for four reasons: (1) ATU was uninvolved with the REA; (2) the REA terms exceed the scope of the CBA; (3) the CBA terms do not address the seniority status or benefits of a *rehired* person; and (4) the CBA establishes a grievance procedure only for disputes that arise under the CBA. (ECF No. 12-1 at PageID 42–43.) ATU argues that these constraints precluded it from pursuing a grievance on Plaintiff's behalf and, more specifically, that it did not have an express or implied legal duty to pursue one. (*Id.*) Finally, ATU contends it did not act arbitrarily, discriminatorily, or in bad faith. (*Id.*)

Here, the Court focuses only on whether ATU acted arbitrarily.[9] The Sixth Circuit has made clear that, "[a] union does not have to process a grievance that it deems lacks merit, as long as it makes that determination in good faith." *Williams v. Molpus*, 171 F.3d 360, 366-67 (6th Cir. 1999). Though Plaintiff correctly argues that he need not show ATU acted in bad faith to prevail on his assertion that it behaved arbitrarily for purposes of his § 301 claim, *see Ruzicka v. General Motors Corp.*, 523 F.2d 306, 310 (6th Cir. 1975), his vague attempt to analogize the instant claim to the one addressed in *Ruzicka* must fail. In *Ruzicka*, the court found that a union's "inexplicabl[e]" decision to allow a deadline to lapse constituted perfunctory treatment of the plaintiff's grievance. *Id*. Unlike in *Ruzicka*, where the union neglectfully failed to advance a grievance that it had already undertaken and processed, here ATU neither undertook nor processed plaintiff's grievance. Put differently, *Ruzicka* involved whether a union negligently handled an

---

[9] Plaintiff has not argued in either his Complaint or Response that ATU acted discriminatorily or in bad faith. Consequently, the Court need not visit these questions in its analysis because they have not been raised. *See Int'l Union v. NLRB*, 844 F.3d 590, 603 (6th Cir. 2016) ("Because there is no allegation of discrimination here, we consider only whether Local 1700 breached its duty by acting arbitrarily or in bad faith."); *see also Dragomier v. Local 1112 UAW*, 620 F. App'x 517, 520–21 (6th Cir. 2015) (only addressing arbitrariness because plaintiff did not argue discrimination or bad faith).

*ongoing grievance* whereas the instant matter involves whether ATU should have *initiated a grievance* at all.  Thus, the Court finds *Ruzicka* too factually dissimilar to be instructive.[10]

Plaintiff also cites *Milstead v. Int'l Bhd. of Teamsters, Local Union No. 957*, 580 F.2d 232 (6th Cir. 1978) for the proposition that "the duty of fair representation may be breached whenever a union ineptly handles a grievance because it is ignorant of those contract provisions having a direct bearing on the case." (ECF No. 14-1 at PageID 104.)  In *Milstead*, the Sixth Circuit held that a union breached its duty of fair representation because its agents misunderstood whether a particular seniority provision applied to the plaintiff and "failed to check the applicability of the provision in preparing for the grievance hearing."  580 F.2d at 236.  The court concluded that, "no analysis of competing collective and individual interests could have occurred because the Union was seemingly unaware of Milstead's interest in the missing seniority provision." *Id*.  Whereas in *Milstead* the union undertook a grievance on the plaintiff's behalf and inattentively misunderstood applicable terms—or absence thereof—in the operative agreement, here ATU neither undertook Plaintiff's grievance nor did it misunderstand any CBA provision in which Plaintiff has a legally cognizable interest regarding his seniority status.  While CBA Sections 20 and 25 do discuss seniority as Plaintiff has alleged, (ECF No. 14-1 at PageID 106), they do not address seniority status for rehired employees in Plaintiff's position.  Unlike the plaintiff in *Milstead*, Plaintiff has failed to identify any CBA provision that affords him his requested relief and ATU correctly

---

[10] *Ruzicka* involved a grievance that the union decided to and did, at least for some time, pursue, albeit carelessly.  "Having sought and been granted two extensions of time to file the Statement and at no time having decided that Appellant's claim was without merit, the Local allowed the final deadline to pass without filing the Statement or requesting a further extension. At this point the Local did not inform either Appellant or GM that it had decided either to continue or to stop processing Appellant's grievance.  Such negligent handling of the grievance, unrelated as it was to the merits of Appellant's case, amounts to unfair representation. It is a clear example of arbitrary and perfunctory handling of a grievance." *Ruzicka*, F.3d 523 at 310.  Here, ATU did not undertake Plaintiff's grievance in the first place and, accordingly, could not have carelessly processed it.  Therefore, *Ruzicka* is factually distinct from this matter.

maintains that because no such provision exists it neither had nor did it "breach any duty of fair representation in declining to pursue a meritless grievance." (*See* ECF No. 17 at PageID 175; ECF No 12-1 at PageID 43.) Consequently, *Milstead* is also inapposite.

That a union may in good faith decline to pursue grievances that it deems meritless is a well settled principle of law in this Circuit. To conclude that a union has breached its duty of fair representation requires a finding that the union's decision not to pursue a particular grievance was "wholly irrational." *See Garrison*, 334 F.3d at 539; *see also Int'l Union*, 844 F.3d at 603–04; *O'Neill*, 499 U.S at 67. Moreover, the law "does not require a union to exhaust every theoretically available procedure simply on the demand of a union member. . . . However, the ignoring or the perfunctory processing of a grievance may violate the duty of fair representation." *St. Clair v. Local 515*, 422 F.2d 128, 130 (6th Cir. 1969) (citing *Vaca*, 386 U.S. at 194). "A union acts arbitrarily by failing to take a basic and required step." *Vencl*, 137 F.3d at 426. "[A] union may not ignore a meritorious grievance or process it in a perfunctory fashion. Unions are not, however, obligated to prosecute grievances that they find to be meritless.'" *Kelsey v. FormTech Indus.*, 305 F. App'x 266, 269 (6th Cir. 2008).

Here, applying *Kelsey*, the Court considers two questions: (1) whether ATU perfunctorily processed Plaintiff's grievance and (2) whether ATU ignored a meritorious grievance. <u>First</u>, ATU could not have perfunctorily processed any grievance because it declined to process one at all. The perfunctory processing prong may have afforded Plaintiff some remedy had ATU decided to grieve his claim and done so carelessly, however those facts do not appear before the Court. <u>Second</u>, ATU has provided a "rational explanation" for why it declined to pursue Plaintiff's grievance, namely that (a) Plaintiff's claim arose under the terms of an REA executed exclusively between Plaintiff and MTM that (b) included provisions beyond the scope of the CBA. *See Int'l Union*,

12

844 F.3d at 604.  Critically, Plaintiff has not identified any CBA provision that addresses his posture as a *rehired* employee and imposes on ATU any legal duty to grieve his claim.  Accordingly, ATU's determination that Plaintiff's grievance lacked merit was not "wholly irrational".  *Garrison*, 334 F.3d at 539.  Therefore, Plaintiff has not stated a claim upon which relief may be granted and Defendant ATU's Motion is hereby **GRANTED**.[11]

## CONCLUSION

For the reasons articulated above, the Court **GRANTS** Defendant ATU's Motion to Dismiss.  (ECF No. 12.)  The Court hereby **DISMISSES WITH PREJUDICE** Count II of the Complaint.  (ECF No. 1.)

**IT IS SO ORDERED**, this 28th day of March 2022.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

---

[11] The Court notes that it has also granted Defendant MTM's Motion to Dismiss.  (ECF No. 20.)  Consequently, Plaintiff has failed to state a claim against his employer and because that claim and this one are considered "interdependent", *both* must fail under § 301.  *Dragomier*, 620 F. App'x 517 at 520–21 ("a plaintiff cannot succeed against either party unless he or she demonstrates violations by both parties").